AKIN, GUMP, STRAUSS, HAUER
& FELD, L.L.P., Petitioner,

v.

NATIONAL DEVELOPMENT AND
RESEARCH CORPORATION,
Respondent.

No. 07–0818.

Supreme Court of Texas.

Argued Dec. 9, 2008.

Decided Oct. 30, 2009.

Rehearing Denied Jan. 15, 2010.

Thomas Fenton Allen Jr., Christopher John Scanlan, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Jeffrey S. Levinger, Hankinson Levinger LLP, Dallas, and Corbet F. Bryant Jr., Richardson, for petitioner.

David W. Shuford, Law Office of David W. Shuford, and Michael L. Jones, Henry & Jones LLP, Dallas, for respondent.

Mark C. Harwell, Cotham Harwell & Evans, P.C., Houston, Luther H. Soules III, Soules & Wallace, San Antonio, for amicus curiae.

Justice JOHNSON delivered the opinion of the Court.

█ When a former client sues a lawyer for improperly prosecuting a prior lawsuit, part of what the plaintiff must prove is the amount of damages that would have been collectible from the defendant in the prior suit. In this legal malpractice case we address the following issues: (1) what evidence is necessary to prove damages would have been collectible in the prior case, and (2) whether a client may recover attorney's fees and expenses paid for representation in the prior case as damages in the malpractice case.

We hold that (1) the amount of damages that would have been collectible in the prior suit is the greater of the amount of a judgment for damages that would have been either paid or collected from the underlying defendant's net assets; and (2) the time at which collectibility is determined is as of or after the time a judgment was first signed in the underlying case. We also hold that attorney's fees and expenses paid for representation in the underlying lawsuit may be recovered as damages to the extent they were proximately caused by the defendant's negligence.

Because there is legally insufficient evidence in this case to support a finding that damages in the underlying suit would have been collectible or that the defendant attorneys' negligence proximately caused the entire amount the jury awarded as damages for attorney's fees and expenses, we reverse the judgment of the court of appeals. Because there is evidence that the attorneys' negligence caused some amount of attorney's fees and expenses in the underlying suit, we remand to the court of appeals for further proceedings.

## I. BACKGROUND

### A. The Underlying Suit

At times relevant to this matter, Panda Energy International Corporation (Panda International) was involved in developing energy-related projects. Its operations were conducted, in part, through several subsidiary corporations and joint ventures. In 1994, National Development and Research Corporation (NDR) entered into a Letter Agreement with Panda Energy Corporation (PEC), one of Panda International's subsidiary corporations, for NDR to assist PEC in locating and securing energy-related projects in China. NDR's compensation was to be (1) an annual service retainer, (2) stock grants in a Panda subsidiary corporation, and (3) success fees for each transaction that closed. To facilitate the stock grants, NDR and PEC entered into a Shareholders' Agreement with respect to Pan–Sino Energy Development Company, L.L.C. (Pan–Sino), the Panda subsidiary corporation whose shares would be transferred to NDR as part of its compensation. The Shareholders' Agreement required NDR to sell its interest in Pan–Sino to PEC if the Letter Agreement was terminated.

Subsequently, and with NDR's approval, PEC assigned its interest in and obligations under the Letter Agreement to Panda International, the parent Panda corporation. PEC also sold its Pan–Sino stock to Panda Global Energy Company (Panda Global), another subsidiary of Panda International.[1]

---

1. NDR, PEC, and Panda International are Texas corporations. Panda Global and Pan- Sino are Cayman Island corporations. NDR,

In the spring of 1997, Panda Global, as the issuing company, closed a $155 million Senior Secured Notes offering (the bonds) from which a project in Luannan County, China (the Luannan project) was funded. NDR assisted with the Luannan project and, pursuant to the Letter Agreement, received 4 1/2% of Pan–Sino's stock. After NDR received its stock in Pan–Sino, and as relevant to this appeal, the corporate structure of the Panda entities and interests was as follows:

Shortly after funding closed on the Luannan project, Panda Global notified NDR that it was terminating the Letter Agreement and exercising its rights under the Shareholders' Agreement to purchase NDR's Pan–Sino stock. NDR disputed Panda Global's authority to take those actions. The dispute resulted in Panda Global filing a declaratory judgment action (the "underlying" or "Panda" suit) in Dallas County against NDR and its President, Robert Tang. NDR and Tang retained Akin Gump to represent them in the suit and agreed to pay the firm an hourly fee and a sliding percentage contingency fee on any recovery they obtained in the suit. NDR and Tang then, through Akin Gump, counterclaimed for declaratory judgment and breach of the Letter Agreement and filed third party claims against Panda International and Pan–Sino. The Panda entities responded by asserting claims against NDR and Tang for breach of contract, constructive fraud, breach of fiduciary duty, unjust enrichment, and negligence.

The case was tried to a jury in August 1999. The trial court held several post-trial hearings and signed, then modified, four successive judgments, all generally in favor of the Panda entities. Final judgment was signed on February 6, 2001, and provided that (1) Panda Global recover $111,043.50 from NDR and Tang as attorney's fees for obtaining the declaratory judgment; (2) Panda Global and Pan–Sino recover $316,273.50 from NDR as attorney's fees pursuant to the Shareholders' Agreement; (3) contingent attorney's fees be awarded in the event of appeal; and (4) all parties take nothing otherwise. The court of appeals affirmed the judgment. *Nat'l Dev. & Research Corp. v. Panda*

PEC, Panda International, and Panda Global have their principal offices in Dallas.

*Global Energy Co.*, No. 05–00–00820–CV, 2002 WL 1060483 (Tex.App.-Dallas May 29, 2002, pet. denied) (not designated for publication).

## B. The Malpractice Suit

NDR [2] later sued Akin Gump for legal malpractice based on its handling of the Panda suit. NDR asserted, in part, that Akin Gump negligently failed to request jury questions asking whether Panda breached the Letter and Shareholders' Agreements. NDR alleged that because there were no jury findings that the agreements were breached by Panda, the trial court rendered judgment against NDR despite the verdict having been favorable to NDR.

The malpractice jury found Akin Gump's negligence resulted in damages to NDR as follows: (1) $168,667.41 for the judgment paid by NDR in the Panda lawsuit; (2) $427,777.77 that was owed to NDR for the fair market value of its Pan–Sino stock; (3) $109,596.68 for success fees owed to NDR; and (4) $216,590.00 for attorney's fees and expenses paid by NDR in the Panda lawsuit. The trial court rendered judgment in favor of NDR according to the verdict.

Akin Gump did not appeal the negligence finding or damages awarded for the $168,667.41 NDR paid on the Panda judgment. 232 S.W.3d 883, 889. However, it appealed the other damage awards. The court of appeals reversed that part of the judgment awarding attorney's fees and expenses and affirmed the remainder of the judgment. *Id.* at 887.

We granted petitions for review filed by both Akin Gump and NDR. Akin Gump urges that the court of appeals erred in upholding the trial court's judgment for the value of NDR's Pan–Sino stock and success fees because (1) there is legally insufficient evidence to support the jury's finding that a favorable judgment in the Panda suit would have been collectible, (2) there is legally insufficient evidence to support the jury's finding as to the amount NDR was owed for the value of its Pan–Sino stock, and (3) the damages should have been reduced by the amount Akin Gump's contingency fee would have reduced NDR's net recovery.

NDR challenges the court of appeals' determination that attorney's fees it paid for representation in the Panda suit are not recoverable as damages.

We agree with Akin Gump that the evidence is legally insufficient to support the jury's findings that NDR would have collected damages awarded in the Panda suit for the value of NDR's Pan–Sino stock and for success fees. Absent such evidence, there is no evidence Akin Gump's negligence proximately caused those damages to NDR. We do not reach the law firm's issue challenging the evidentiary support for the damages findings or the issue of whether NDR's damages should be reduced by Akin Gump's contingency fee.

We also agree with NDR that it may recover damages for attorney's fees it paid [3] to its attorneys in the underlying suit to the extent the fees were proximately caused by the defendant attorneys' negligence. We conclude the evidence is legally sufficient to support a finding that

---

**2.** Tang was initially a party in the suit but was dismissed in the trial court. He is not a party to this appeal.

**3.** The jury found and NDR argues that the attorney's fees *paid* in the Panda suit are recoverable as damages. We address only that issue and express no opinion as to whether attorney's fees incurred but not paid in an underlying case would be recoverable as damages.

some attorney's fees paid by NDR were proximately caused by Akin Gump's negligence, but the evidence is legally insufficient to support the finding of $216,590.

## II. COLLECTIBILITY OF A JUDGMENT IN THE UNDERLYING SUIT

■■■ To prevail on a legal malpractice claim, the plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages. *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex. 1995). When the claim is that lawyers improperly represented the plaintiff in another case, the plaintiff must prove and obtain findings as to the amount of damages that would have been recoverable and collectible if the other case had been properly prosecuted. *Cosgrove v. Grimes,* 774 S.W.2d 662, 666 (Tex.1989). In *Cosgrove,* a lawyer was sued for failing to properly prosecute an automobile collision case. *Id.* at 662. The jury was charged to find the amount of damages the malpractice plaintiff would have "in reasonable probability recovered" and "in reasonable probability collected from [the defendant] *as a result of the collision." Id.* at 665 n. 3 (emphasis added). Addressing the submission, we said, "The two issues should have inquired as to the amount of damages recoverable and collectible [in the prior case] if the suit had been *properly prosecuted." Id.* at 666.

The jury in this case was charged to find the amount of damages that would have been "recovered and collected" in the prior case. In connection with the damages question, the jury was instructed:

> In determining damages, you are instructed to only consider the amount of money NDR actually would have recovered and collected from [Panda Global and Panda International].

*See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES, PRODUCTS PJC 84.3 cmt. (2008). Neither party questions whether the jury instruction was correct. *Cf. Cosgrove,* 774 S.W.2d at 665 n. 3 (instructing jury to find the amount of damages the plaintiff would have collected to a reasonable probability). Because there was no objection to the charge as submitted, we assume, without deciding, that the instruction was correct and measure the evidence by the charge as given. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000).

Akin Gump's argument on the collectibility issue is twofold. First, it asserts the court of appeals erred in considering evidence of collectibility as of the time the Panda suit was filed in 1997, as opposed to evidence of collectibility on or after the date execution could have issued on the final judgment. Second, it contends that if a judgment favorable to NDR had been rendered in the underlying suit for its Pan–Sino stock values and success fees, there is legally insufficient evidence that the judgment would have been collected.

### A. When Must Judgment be Collectible

The Panda case was filed in October 1997 and tried in August 1999. The trial court signed its first judgment on February 25, 2000, and its final judgment on February 6, 2001. In affirming the trial court judgment for NDR, the court of appeals considered evidence of the Panda entities' financial condition at times before any judgment was signed. In doing so, the court cited *Jackson v. Urban, Coolidge, Pennington & Scott,* 516 S.W.2d 948, 949 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ ref'd n.r.e.), for the proposition that the time to be considered in determining whether NDR would have collected on a

judgment was "on the date the [underlying] case was filed or anytime thereafter." 232 S.W.3d at 895. Akin Gump asserts collectibility can only be proved by evidence of the underlying defendant's financial status as of the time execution could have been issued—thirty days after the final judgment was signed. We agree with Akin Gump's position in part.

NDR, citing Texas Civil Practice and Remedies Code sections 31.002 and 63.001(c), argues that the court of appeals was correct: evidence of collectibility prior to the date the judgment was signed is relevant because some remedies are available to judgment creditors even before a judgment becomes final. Section 31.002, commonly referred to as the "turnover statute," allows a party that has already secured a final judgment to collect the judgment through a separate court proceeding. TEX. CIV. PRAC. & REM. CODE § 31.002; *see also Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas*, 810 S.W.2d 738, 739 n. 3 (Tex.1991) (stating that the "purpose of the turnover statute is to aid the collection of final money judgments"). Because that section does not address prejudgment remedies, it does not aid NDR here.

Section 63.001 contemplates the availability of prejudgment writs of garnishment. But NDR did not attempt to garnish any Panda assets before judgment nor did it prove that it would have been entitled to do so. Accordingly, Section 63.001 does not make evidence of Panda International's prejudgment financial condition relevant in determining collectibility of a judgment favorable to NDR.

We next address Akin Gump's position that a plaintiff must prove a judgment would have been collectible when the judgment becomes final or at some later time.[4] Texas Rule of Civil Procedure 627 states that unless an exception applies, "the clerk of the court or justice of the peace shall issue the execution upon [a] judgment upon application of the successful party or his attorney after the expiration of thirty days from the time a final judgment is signed." TEX. R. CIV. P. 627. Depending on the particular case's circumstances, however, the thirty-day period may be shortened or extended. *See* TEX. R. CIV. P. 628 (allowing a trial court to issue execution any time before the thirtieth day after the final judgment is signed if the plaintiff shows that the defendant may remove personal property subject to execution out of the county); TEX. R. CIV. P. 627 (extending the period for which a clerk must wait before issuing execution when a motion for new trial or a motion in arrest of judgment is filed). Further, unless the judgment debtor properly supersedes the judgment, the judgment creditor is not precluded from immediately filing an abstract of judgment to aid in seeking satisfaction of its judgment. *See* 5 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 31:2 (2d ed. 1999).

▬ In light of the foregoing, we conclude that evidence a defendant in the underlying suit could have satisfied a judgment at times *prior* to the time a judgment is signed generally will not be relevant to and will not be probative of the judgment's collectibility unless, as discussed below, it is also shown that the defendant's ability to satisfy a judgment

---

4. To be enforced, an unsatisfied final judgment must not have become dormant and must not be preempted by federal law. *See* TEX. CIV. PRAC. & REM. CODE § 34.001; 5 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS

CIVIL PRACTICE § 31:3 (2d ed. 1999). Here, however, there is no contention that a judgment in the Panda suit would have been dormant or preempted by federal law.

was not diminished by the passage of time until judgment was signed. On the other hand, because a judgment creditor does not have to wait thirty days past signing of the final judgment to begin procedures for collecting its judgment, evidence that the judgment would have been collectible on or after the date a judgment was first signed will be relevant.

■■ Part of the evidence NDR references predates not only signing of a judgment in the Panda suit but the suit itself. We agree that prejudgment or pre-suit evidence of solvency or other evidence that damages would be collectible from a defendant could be sufficient to support a finding that damages were later collectible, provided the evidence also shows a reasonable probability that the underlying defendant's financial condition did not change during the time before a judgment was signed in a manner that would have adversely affected collectibility. Absent such evidence as to the gap time period, however, a factfinder could only speculate as to how events during the period affected the judgment debtor's finances. Findings based on speculation are not based on legally sufficient evidence. *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex.1996) (noting that proof of causation cannot rest on speculation or conjecture).

### B. Evidence of Collectibility

The court of appeals stated that a legal malpractice plaintiff must prove the underlying defendant was solvent in order to prove collectibility of damages that would have been recovered in the underlying suit. 232 S.W.3d at 895. We agree with the court of appeals, at least in part. Proving the underlying defendant was solvent is one way to prove collectibility when "solvent" means the underlying defendant owned sufficient property subject to legal process to satisfy all outstanding debts and

have property remaining to satisfy some or all of the damages the malpractice plaintiff would have recovered. *See* BLACK's LAW DICTIONARY 434 (8th ed. 2004) (defining a "solvent debtor" as a debtor who owns enough property to satisfy all outstanding debts and against whom a creditor can enforce a judgment). But collectibility may also be shown in other ways. For example, some judgment debtors might be classified as insolvent because they have a balance sheet showing more debts than assets, or showing liens or pledges that encumber their property, yet there is insurance or a surety that will pay some or all of the judgment. Or an insolvent judgment debtor might have current income, profits, or access to finances that can be diverted to satisfy a judgment. Evidence that damages awarded against the debtor in the underlying suit probably would have been paid, even though the debtor was not solvent, would be probative evidence that the damages were collectible.

Generally, then, the amount that would have been collectible in regard to an underlying judgment—provided the judgment is not dormant or preempted—will be the greater of either (1) the fair market value of the underlying defendant's net assets that would have been subject to legal process for satisfaction of the judgment as of the date the first judgment was signed or at some point thereafter, or (2) the amount that would have been paid on the judgment by the defendant or another, such as a guarantor or insurer. *See* 4 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 31.17 (2009); *see also James V. Mazuca & Assocs. v. Schumann*, 82 S.W.3d 90, 96 (Tex.App.-San Antonio 2002, pet. denied) (finding collectibility was adequately shown by a letter recognizing the defendant in the underlying suit was insured and the policy would have satisfied a judgment against the defendant). But

collectibility must be proved; it is not presumed.

We next consider Akin Gump's contention that the evidence was legally insufficient to support the jury's finding that NDR would have collected damages for the value of its Pan–Sino stock and success fees had they been awarded in the Panda suit. In doing so, we note NDR did not claim in the court of appeals that Panda Global was solvent or that damages would have been collectible from it. *See* 232 S.W.3d at 895 (noting that the parties did not dispute that Panda Global was insolvent). Nor does it do so here. Accordingly, our focus will be on whether NDR would have recovered and collected damages from Panda International.

## C. Analysis

▪▪▪ In reviewing a legal sufficiency challenge to the evidence, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge "will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Kroger Tex., Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006) (quoting *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004)).

The jury charge instructed that in determining damages the jury was to consider the amount NDR would have collected from "Panda." "Panda" was defined as Panda International and Panda Global. As previously noted, however, because NDR did not address the collectibility of damages from Panda Global in the court of appeals and does not do so here, our review is for evidence that damages would have been collectible from Panda International.

▪▪▪ NDR generally contends the evidence showing Panda International "owned numerous subsidiaries with hundreds of millions of dollars of assets is evidence that Panda [International], through its ownership of these subsidiaries, had sufficient assets to pay" a judgment. Specifically, NDR points to the following as legally sufficient evidence of collectibility from Panda International: (1) May 2001 "Consolidated Financial Statements" which were attached to a Panda International business records affidavit and showed over $47 million of owner's equity; (2) Panda International owned 100% of the stock of Panda Holdings, Inc. (Panda Holdings) and a May 1999 investor service report showed that Panda Holdings had $70 million on its balance sheet; (3) Tang's testimony that Panda International and Panda Global indirectly owned a portion of the Luannan project as well as several other power projects in the United States, Latin America, and Asia; (4) the value of Pan–Sino stock owned by Panda Global (which was wholly owned by Panda International) would have been over $8 million based on the jury finding as to the value of NDR's 4.5% ownership interest in Pan–Sino; (5) the ability of Panda International and Panda Global to pay NDR $593,000 in success fees in 1997; and (6) the award of attorney's fees to Panda International and

Panda Global in the underlying suit as well as their ability to pay their own attorneys to prosecute their claims against NDR. We will address the evidence as it is categorized by NDR.

First, the consolidated financial statements which NDR refers to as part of Panda International's business records, and as showing "owner's equity," comprise just over one page. The document heading states "Consolidated Financial Statements (JV1–JV4) as of May 2001." The statements (1) do not purport to represent Panda International's financial capabilities or access to any asset shown on the financial statement, and (2) do not expressly set out which Panda entities were included in the statement, but imply that only the financial condition of the four joint ventures is represented. The same group of business records included a one-page balance sheet from Pan–Western, the subsidiary through which Panda International's interest in the joint ventures flowed.[5] Pan–Western owned 87.92% of the joint ventures. The Pan–Western balance sheet, however, showed no owner's equity and indicated that as of May 31, 2001, the Luannan Project had not commenced commercial operations, Pan–Western had not yet received any interest on loans it made to the joint ventures to fund the project, and Pan–Western had paid no interest on the $96.136 million in loans it received from Panda Global, the issuer of the $155 million in bonds that funded the Luannan project.

To the extent the consolidated financial statement referenced the joint ventures, the joint ventures were not parties to the Panda suit, nor did NDR allege that it would have been entitled to collect a judgment from any of them. *See* Tex. Bus. Orgs. Code § 21.223 (stating that any affiliate of a corporation shall be under no obligation to the corporation or to its obligees with respect to "any contractual obligation of the corporation or any matter relating to or arising from the obligation" unless "the obligee demonstrates that the . . . affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee"). Nor does one corporation's ownership of all or the majority of a second entity affect the second entity's existence as a distinct, separate legal entity. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 798 (Tex.2002); *Lucas v. Tex. Indus., Inc.,* 696 S.W.2d 372, 374 (Tex.1984); *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 573 (Tex.1975); *Bell Oil & Gas Co. v. Allied Chem. Corp.,* 431 S.W.2d 336, 337 (Tex.1968). The consolidated financial statements NDR references are not evidence that a judgment would have been collectible from Panda International as of or after February 2000.

Next, NDR references a report reflecting that Panda Holdings's May 1999 balance sheet showed it had "millions of dollars." To begin with, NDR does not contend that it would have been entitled to collect its damages from Panda Holdings, a separate corporation, and Panda International's ownership of Panda Holdings is not, by itself, evidence that NDR would have collected any amount from Panda International, the parent corporation. *See* Tex. Bus. Orgs. Code § 21.223; *BMC Software,* 83 S.W.3d at 798. Further, the report was dated May 14, 1999, which was more than nine months before

---

5. As we begin our analysis of the evidence, it is helpful to review the relationships among the Panda entities. Panda International owned 100% of Panda Holdings, which owned 100% of Panda Global. Panda Global owned 95.5% of Pan–Sino (NDR owned the other 4.5%). Pan–Sino owned 99% of Pan–Western. Pan–Western owned 87.92% of each of the joint ventures, which in turn owned the Luannan facilities.

the first judgment was signed on February 25, 2000. And the May 1999 report itself negates its value as evidence a judgment would have been collectible from Panda Holdings, even disregarding the fact Panda Holdings is a separate corporation from Panda International. The document is a third party report disclosing that "Moody's Investors Service has downgraded the bonds of Panda Global Energy from B2 to B3. The rating outlook is negative." The report says that Panda Holdings "has up to $70–million available on its balance sheet *currently*," but "*there is no certainty as to how much may be available both in the short—and medium-term to supply Panda Global* " (emphasis added). To the extent NDR's argument is that cash held by Panda Holdings implies the corporation was an asset evidencing Panda International's solvency, we disagree with it. The Offering Memorandum for the $155 million bond issue contains financial data for Panda Holdings, including an Unaudited Pro Forma Consolidated Balance Sheet as of December 31, 1996. The balance sheet showed Panda Holdings' liabilities exceeded its assets by $101.5 million. There is no evidence that its financial situation improved even though it sold one of its assets and had $70 million in cash as of May 1999. No evidence shows whether the asset sale was at a loss or profit, how the sale affected the solvency of Panda Holdings itself, whether the cash was committed to and used for other projects or to pay creditors, or other such details. The May 1999 report simply is not evidence that damages would have been collectible from Panda International.

Third, the fact that success fees were paid to NDR in May 1997 is no evidence a judgment in the Panda suit would have been collectible over two years later. There is no evidence of events between the time the success fees were paid and the time judgment was signed except testimony evidencing financial deterioration of the Panda entities and projects.

NDR argues that collectibility is also shown by Panda International's indirect ownership of the Luannan Project and other power projects and Tang's testimony as to Panda International's ownership of the projects. Tang testified that Panda International indirectly owned multiple projects. But Tang's testimony is no better evidence a judgment would have been collectible from Panda International than the financial statement in Panda International's business records. First, the evidence was uncontroverted that the joint ventures directly owned the Luannan project and there were several corporate entities between the joint ventures and Panda International. Moreover, there was no evidence the judgment was collectible from the joint ventures themselves, and NDR does not contend it would have been. Second, Tang's testimony did not set out any particular owner's equity, cash on hand, current assets, or similar details that would support a conclusion Panda International was solvent or that NDR could have collected any damages from it. Third, testimony from the Panda trial of a Panda International employee with first-hand knowledge of Panda International's affairs was read into evidence. The employee's testimony was that he was "trying to save the company" because the Luannan project "cannot meet its debt, and therefore, we are at risk of foreclosure."

Next, the total value of the Pan–Sino stock based on NDR's ownership interest is not evidence that damages in the Panda suit would have been collectible. The court of appeals relied on the jury finding that NDR's interest in Pan–Sino stock was valued at over $400,000 to conclude that the remaining 94.5% of Pan–Sino stock

was worth over $8 million. The court attributed that value to Panda International. 232 S.W.3d at 895. But on April 11, 1997, four years prior to the final judgment in the Panda suit, PEC had transferred all the Pan–Sino stock to Panda Global, which NDR does not contend was solvent. The Chairman of the Board and Chief Executive Officer of Panda International testified in the Panda trial that bonds with a face value of over $155 million issued in 1997 to finance the Luannan project were trading at "30 to 40 cents on the dollar" at the time of the Panda trial because the "Chinese markets ha[d] deteriorated dramatically.... Banks ha[d] lost all confidence in this Chinese market." His testimony was introduced as evidence in the malpractice suit. Further, notes accompanying a Balance Sheet for Pan–Western Energy Corporation LLC (Pan–Western) stated that as of May 31, 2001, the Luannan Project had not commenced commercial operations, Pan–Western had not received any interest on loans it made to fund the project, and Pan–Western had not paid any interest on the loans it received from Panda Global, the issuer of the bonds that funded the project. The Bond Offering Memorandum showed that the $155 million bonds were secured not only by the assets of Panda Global, including the Pan–Sino stock, but by the capital stock of Panda Global itself.[6] The only interest Panda International had in the Pan–Sino stock flowed from Panda Global's status as a subsidiary of Panda International, and any value the Pan–Sino stock had was subsumed in the uncontested insolvent financial status of Panda Global.

NDR asserts that the award of attorney's fees Panda Global incurred in the Panda suit and the fact that Panda International and Panda Global obtained representation in the Panda suit are evidence a judgment against them was collectible. We disagree. First, if judgment in the Panda suit had been in favor of NDR, then Panda Global would not have recovered attorney's fees. Therefore, the fact it recovered fees in the suit has no bearing on whether a judgment against Panda Global would have been collectible. See Cosgrove, 774 S.W.2d at 666. Second, as to NDR's assertion that a judgment would have been collectible because the Panda parties had sufficient assets to pay attorneys in the underlying lawsuit, NDR offered no evidence of (1) the terms by which the attorneys for the Panda entities were compensated, (2) whether the attorneys were actually paid, (3) the source of any funds used to pay the attorneys, even if they were paid, or (4) if any funds that might have been used to pay the Panda attorneys would have been used to pay NDR's damages.

In sum, none of the evidence NDR cites is legally sufficient to prove collectibility of damages it would have been awarded in the Panda suit for its Pan–Sino stock value and success fees. Accordingly, we need not and do not reach the issues of whether there was evidence to support the jury findings as to the amount of NDR's damages and whether the judgment in favor of NDR should have been reduced by the

---

**6.** The record shows that Panda Global owned 94.5% of Pan–Sino, which in turn owned 99% of Pan–Western. The 1997 Bond Offering Memorandum stated that the bonds were secured by a pledge of 100% of Panda Global's Capital Stock as well as by

a security interest in certain assets of [Panda Global] and its Subsidiaries, including a

pledge of (i) at least 90% of the Capital Stock of Pan–Sino, (ii) 99% of the Capital Stock of Pan–Western, (iii) the Issuer Note and (iv) the Luannan Facility Notes and the granting of a security interest in certain funds of [Panda Global] and its Subsidiaries maintained by the Senior Secured Notes trustee.

contingency fee Akin Gump would have collected had NDR prevailed in the Panda lawsuit.

## III. ATTORNEY'S FEES AS DAMAGES

In its petition, NDR argues that the court of appeals erred in holding the attorney's fees it paid in the Panda lawsuit are not recoverable. 232 S.W.3d at 897. It says the fees paid to appeal the judgment in Panda's favor are economic damages proximately caused by Akin Gump's negligent failure to properly submit jury questions.[7]

Citing *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1964), NDR acknowledges the general rule that a party may not recover attorney's fees for the litigation in which it is involved unless recovery is authorized by statute or contract. It urges adoption of the "tort of another" exception. *See* Restatement (Second) of Torts § 914(2) (1977) (allowing a party to recover attorney's fees when that party must, as a result of some tort committed by another, bring or defend an action against a third party). NDR contends that under the exception, it can recover the attorney's fees it had to pay for appealing the Panda judgment.

As to the jury's finding on attorney's fees, Akin Gump asserts (1) NDR is seeking fee disgorgement, which is available only if the attorneys breached a fiduciary duty to NDR, but NDR did not plead or request jury questions on breach of fiduciary duty, *see Burrow v. Arce*, 997 S.W.2d 229, 241–43 (Tex.1999); (2) the "tort of another" exception to the general rule is not implicated by facts such as these where the fees being sought were paid to the defendant attorneys in the underlying suit; (3) NDR did not prove it paid the appellate fees it seeks to recover; and (4) to the extent NDR paid the fees, the fees would have been incurred regardless of the firm's negligence and therefore were not proximately caused by Akin Gump's actions.[8]

We disagree with Akin Gump that attorney's fees paid in an underlying suit can only be recovered through forfeiture for breach of fiduciary duty. For the reasons set out below, we conclude the general rule as to recovery of attorney's fees from an adverse party in litigation does not bar a malpractice plaintiff from claiming damages in the malpractice case for fees it paid its attorneys in the underlying suit. Because the general rule does not apply to NDR's claim, we need not and do not address whether the exception set out in section 914(2) of the Second Restatement should be adopted as Texas law.

---

**7.** In its petition for review, NDR claims that legally sufficient evidence supports the jury finding it paid attorney's fees to Akin Gump for appeal. In its reply brief, NDR argues that it also paid post-trial and appellate attorney's fees to two attorneys who were not members of the firm and the evidence it paid those fees also supports the jury finding. Akin Gump asserts NDR did not timely raise the argument about evidence of fees paid to separate counsel supporting the jury finding. We believe the argument is fairly encompassed within the issue framed by NDR. Tex R. App. P. 53.2(f) ("The statement of an issue or point [in a petition for review] will be treated as covering every subsidiary question that is fairly included.").

**8.** Akin Gump does not assert the collectibility argument in response to NDR's petition seeking attorney's fees based on the actual jury finding awarding attorney's fees. The firm makes the collectibility argument as to attorney's fees only in response to NDR's argument that if Akin Gump had not negligently submitted the underlying case, NDR would have recovered its appellate attorney's fees under Texas Civil Practice and Remedies Code § 38.001.

## A. The American Rule

It has long been the rule in Texas that attorney's fees paid to prosecute or defend a lawsuit cannot be recovered in that suit absent a statute or contract that allows for their recovery. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex.2006) ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees."); *Wm. Cameron & Co. v. Am. Sur. Co. of N.Y.,* 55 S.W.2d 1032, 1035 (Tex. Comm'n App.1932, judgm't adopted) ("It is settled law in this state that, unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract."); *Sherrick v. Wyland,* 14 Tex. Civ.App. 299, 37 S.W. 345, 345 (1896) ("It has often been ruled, in this state and elsewhere, that fees of counsel, incurred in prosecuting a suit for or defending against a wrong, are not ordinarily recoverable as actual damages, because they are not considered proximate results of such wrong."). The rule is known as the American Rule. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("[P]arties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser."); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

■ The court of appeals in this case concluded that attorney's fees are not recoverable as damages for legal malpractice. 232 S.W.3d at 896–97 (citing *El Dorado Motors, Inc. v. Koch,* 168 S.W.3d 360, 366 (Tex.App.-Dallas 2005, no pet.) (noting that attorney's fees are not recoverable in a legal malpractice suit because attorney's fees expended in prior litigation are recoverable only when provided for by contract or agreement between the parties)). The court of appeals also cited *Martin–Simon v. Womack,* 68 S.W.3d 793, 797–98 (Tex. App.-Houston [14th Dist.] 2001, pet. denied), where it was held that a plaintiff in an interference-with-contract case could not recover attorney's fees as damages when the fees were paid in a prior suit related to enforcement of the contract. That court relied on *Dallas Central Appraisal District v. Seven Investment Co.,* 835 S.W.2d 75, 77 (Tex.1992), and *New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914, 915 (Tex.1967), for the proposition that attorney's fees are not recoverable unless provided for by statute or contract. But those cases should not be read so broadly.

For example, in *New Amsterdam Casualty Co.,* we considered the appeal of a case in which an unpaid materialman sued a construction contractor and its surety. *New Amsterdam Cas. Co.,* 414 S.W.2d at 914. Judgment was rendered in favor of the materialman for the amount due on the materials plus attorney's fees for prosecuting the suit. *Id.* at 915. The appeal before this Court concerned only the award of attorney's fees. *See id.* The Court reversed the award of attorney's fees and rendered judgment in favor of the surety. *Id.* at 916. In doing so, we "reaffirmed the rule previously recognized as settled law . . . that attorney's fees are not recoverable either in an action in tort or a suit upon a contract unless provided by statute or by contract between the parties." *Id.* at 915. Our statement, considered without reference to the facts of the case, could be read out of context as generally precluding recovery of attorney's fees for prosecuting or defending a suit. It was not intended to extend so far.

The situation before us does not involve the American Rule that prevails in Texas. NDR does not seek to recover attorney's fees for prosecuting its malpractice suit against Akin Gump. It seeks damages measured by the economic harm it suffered from Akin Gump's breach of its duty of care in prosecuting the Panda suit. Akin Gump does not contend it did not have or did not breach a duty of care. Thus, unless there is some reason not to consider the Panda suit attorney's fees as damages in the malpractice suit, the question becomes an evidentiary one: Does evidence support the jury's finding that $216,590 in attorney's fees and expenses were proximately caused by Akin Gump's negligence?

Akin Gump, in effect, urges us to exclude all the Panda suit attorney's fees from being considered as damages. It says that awarding damages for the fees would be fee forfeiture by another name, and NDR did not plead or obtain findings that Akin Gump breached a duty that would allow fee forfeiture under the holding of *Burrow v. Arce. See Burrow*, 997 S.W.2d at 241–43. We disagree with the proposition.

■■■ If an attorney has breached his or her fiduciary duty to a client, then part or all of the fees the client paid may be recovered through disgorgement and forfeiture. *See id.* at 237. In *Burrow*, we noted our agreement with the following forfeiture rule: "A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter." *Id.* at 241–42 (quoting Restatement (Third) of the Law Governing Lawyers § 49 (Proposed Final Draft No. 1, 1996)). But because attorney's fees in an underlying case may be subject to forfeiture for breach of fiduciary duty, it does not follow that fees and expenses paid to attorneys who negligently try a suit should not be recoverable as compensatory damages in a second suit for malpractice.

In *Burrow*, the plaintiffs were injured in explosions at a Phillips 66 chemical plant. *Burrow*, 997 S.W.2d at 232. The defendant lawyers represented the plaintiffs in a suit for their personal injuries. *Id.* The suit was settled and the plaintiffs received settlement payments. *Id.* They then sued their lawyers for breach of fiduciary duty, fraud, violations of the Deceptive Trade Practices–Consumer Protection Act, negligence, and breach of contract. *Id.* at 232. The trial court granted summary judgment for the defendant attorneys on the basis that the settlement in the underlying case was fair and reasonable and any misconduct of the lawyers did not cause damages to the plaintiffs. *Id.* at 233.

This Court held that the defendants were not entitled to summary judgment because they did not establish as a matter of law that the plaintiffs suffered no actual damages. *Id.* at 237. As to the breach of fiduciary duty claim, though, we held that a client need not prove actual damages as part of the breach of fiduciary duty claim. *Id.* at 240. We remanded the claim to the trial court for determination of whether the lawyers breached their fiduciary duties and if so, the appropriate amount of fee forfeiture. *Id.* at 246. The question of whether the plaintiffs were precluded from recovering, as damages in a malpractice case, attorney's fees paid to the defendant lawyers in the underlying case was not before the Court in *Burrow*. As we said, "[t]he main purpose of [fee] forfeiture is not to compensate an injured principal, even though it may have that effect. Rather, the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty." *Id.* at 238.

A negligence claim, unlike a fee forfeiture claim for breach of fiduciary duty, is about compensating an injured party. *See Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex. 1999) ("[W]hen the injuries caused by an attorney's negligence are economic, the plaintiff can be fully recompensed by the recovery of any economic loss. Restoration of the pecuniary interest suffices to return a plaintiff to her prior circumstances."); THOMAS D. MORGAN, LAWYER LAW: COMPARING THE ABA MODEL RULES AND THE ALI RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS 98 (2005) ("A key distinction between fee forfeiture and the malpractice remedy is that the amount forfeited need have no relation to actual damages suffered by the client.") (emphasis omitted); RESTATEMENT (SECOND) OF TORTS § 903 cmt. a (1977) ("When there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed.").

We see little difference between damages measured by the amount the malpractice plaintiff would have, but did not, recover and collect in an underlying suit and damages measured by attorney's fees it paid for representation in the underlying suit, if it was the defendant attorney's negligence that proximately caused the fees. In both instances, the attorney's negligence caused identifiable economic harm to the malpractice plaintiff. The better rule, and the rule we adopt, is that a malpractice plaintiff may recover damages for attorney's fees paid in the underlying case to the extent the fees were proximately caused by the defendant attorney's negligence. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex.2004); *Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799 (Tex.1974); 3 RONALD E. MALLEN &

JEFFREY M. SMITH, LEGAL MALPRACTICE § 21:19 (2009).

**B. Analysis**

NDR's position is that it incurred damages by paying attorney's fees to appeal the judgment rendered against it because Akin Gump negligently failed to request inclusion of necessary questions in the jury charge. NDR does not contest its burden to prove that Akin Gump's negligence proximately caused it to pay the fees and expenses it seeks to recover.

Proximate cause has two elements: cause in fact and foreseeability. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004). Cause in fact must be established by proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ("but for" the act or omission), the harm would not have occurred. *See id.* at 799. Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof. *Leitch*, 935 S.W.2d at 119; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995).

**1. Fees and Expenses Paid to Akin Gump**

NDR does not contest the reasoning of the court of appeals that "even a successful litigant may be forced to defend its judgment when the losing party appeals." 232 S.W.3d at 896. Instead, NDR argues that the court of appeals overlooked Texas Civil Practice and Remedies Code section 38.001, which allows a successful litigant on a breach of contract claim to recover its attorney's fees for appeal. It asserts that NDR would not have suffered economic loss by paying appellate attorney's fees because a judgment favorable to NDR would have included provisions that it re-

cover appellate attorney's fees from Panda.

■ First, we agree with the court of appeals. There is no evidence that if NDR had recovered a favorable judgment in the Panda suit, it would not have paid appellate fees to defend the judgment. The evidence does not show that if NDR had obtained a favorable judgment, Panda would not have appealed the case or that NDR would not have defended its judgment on appeal if Panda appealed. Thus, the court of appeals was correct in determining there is legally insufficient evidence to support a finding that Akin Gump's negligence was a cause in fact of the appellate attorney's fees and expenses NDR paid to Akin Gump.

Next, we address NDR's argument that it would have been entitled to recover in the Panda suit for its appellate attorney's fees under Texas Civil Practice and Remedies Code section 38.001. As Akin Gump points out, NDR's position in the malpractice suit was not that it would have recovered and collected a judgment for additional appellate attorney's fees from Panda had Akin Gump properly tried the Panda case. The damages question in the malpractice jury charge asked about, and NDR argued to the jury that it sought recovery for, "[a]ttorney's fees and expenses *paid* by NDR in the *Panda Lawsuit*," not about what fees and expenses would have been recovered and collected from Panda had Akin Gump properly tried the underlying case.

## 2. Fees for Separate Counsel

■ The situation is different as to the fees NDR paid the separate, additional counsel who were retained post-trial. Post-trial proceedings focused on whether the jury verdict entitled NDR to specific performance of the Letter and Shareholder Agreements calling for NDR's Pan–Sino stock to be purchased by Panda upon termination of the agreements, or whether NDR waived its claims by failing to request jury questions as to breach of the agreements. NDR at that point retained law Professors William Dorsaneo and Maureen Armour to help Akin Gump convince the trial judge to render judgment favorable to NDR. There was evidence that Professors Dorsaneo and Armour were retained to focus on the jury charge and argue to the trial court that despite the absence of a jury finding that Panda breached the agreements, the verdict supported judgment for NDR. The evidence is legally sufficient to support the jury finding that Akin Gump's negligence was a cause in fact of NDR's retaining the professors and, thus, that the firm's negligence proximately caused NDR to pay the fees and expenses of the professors.

Akin Gump further argues that even if NDR were entitled to recover fees and expenses charged by Dorsaneo and Armour, there was no evidence NDR actually paid them. However, Professor Armour testified NDR paid her several thousand dollars for her work on the case, and Tang testified that Professor Dorsaneo was paid for his work. Thus, there was more than a scintilla of evidence that NDR actually paid attorney's fees and expenses to the professors. *See City of Keller*, 168 S.W.3d at 810.

■ But although there is some evidence that the fees and expenses of Dorsaneo and Armour were paid, the evidence is undisputed that the total of those payments was less than half the $216,590 awarded by the jury. NDR only argues that it paid Armour $49,500 and Dorsaneo $10,000. Accordingly, although the evidence is legally sufficient to support a finding of some amount, it is legally insufficient to support the entire amount the jury found. *Guevara v. Ferrer*, 247

S.W.3d 662, 669–70 (Tex.2007); *see Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 841 (Tex.1997).

 Ordinarily, we render judgment when we sustain a no evidence issue. *Guevara,* 247 S.W.3d at 670; *Murdock,* 946 S.W.2d at 841. However, when there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment. *Guevara,* 247 S.W.3d at 670. In such a situation, we may either remand the case to the court of appeals for a suggestion of remittitur or to the trial court for a new trial. *Id.* Given the state of the evidence in this case, it is appropriate to remand the case to the court of appeals. *See id.* (remanding to the court of appeals to consider suggestion of remittitur rather than remanding for a new trial after determining the evidence was legally insufficient to support all of the damages awarded by the jury). If the court of appeals determines that suggestion of remittitur is not appropriate or is unable to successfully suggest a remittitur, then the part of the case involving liability and attorney's fees and expenses—including those of both Akin Gump and separate counsel—should be remanded for a new trial. *See* TEX. R. APP. P. 61.2.

## IV. CONCLUSION

We reverse the court of appeals' judgment. We render judgment that NDR take nothing on its claims for the fair market value of its stock and success fees owed to it. The claim for attorney's fees and expenses is remanded to the court of appeals for further proceedings consistent with this opinion.

Justice GUZMAN did not participate in the decision.