In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00560-CV
_____

CLARK CONSTRUCTION OF TEXAS, LTD. AND CLARK
CONSTRUCTION OF TEXAS, INC., Appellants

V.

KAREN PATRICIA BENDY, PEGGY RADER, AND DELUS KUHNERT,
Appellees

On Appeal from the 163rd District Court
Orange County, Texas
Trial Cause No. B-100053-C

MEMORANDUM OPINION

Karen Patricia Bendy sued Clark Construction of Texas, Ltd. and Clark
Construction of Texas, Inc. ("Clark Construction") for negligence, premises
liability, and premises defect arising out of injuries she allegedly sustained during a
motor vehicle collision that occurred on a highway being repaved by Clark
Construction. Peggy Rader and Delus Kuhnert, who were passengers in Bendy's
vehicle at the time of the accident, intervened in Bendy's lawsuit. Clark

1

Construction filed a traditional motion for summary judgment, which the trial court denied. On appeal, Clark Construction challenges the denial of its motion for summary judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)(1) (West Supp. 2012). We affirm the trial court's order denying Clark Construction's motion for summary judgment.

Factual Background

On May 19, 2009, Clark Construction was performing construction on farm to market road ("FM") 105 in Orange County, Texas. A collision between Armando Carmona's vehicle and Bendy's vehicle occurred in the construction zone. Bendy and Carmona both received traffic citations. According to the police report, Carmona disregarded the construction warning sign and drove in a lane designated as non-travel, Bendy turned right when unsafe to do so, and the two vehicles collided.

In his deposition, Carmona testified that he was driving in the right lane of FM 105 where no construction work was underway. Carmona saw traffic cones blocking the left and middle lanes. Bendy, Rader, and Kuhnert testified that they had stopped at the construction zone to wait for a pilot car. Kuhnert saw flagmen and signs warning of a construction zone ahead, but did not recall seeing barricades or signs indicating which lanes were closed. Bendy, Kuhnert, and Rader

2

testified that they never saw Carmona's vehicle before impact, and Bendy testified that the construction vehicles obscured her view. Bendy opined that Clark Construction should have installed barricades to block off the road so that Carmona would not have driven into the area.

Timothy Hayes, who witnessed the accident, testified that he saw no "road closed" signs. Hayes was two cars behind Bendy, and he testified that traffic cones were positioned to the right of his vehicle. Before the collision, Hayes saw Carmona's vehicle approaching. He testified that traffic cones and a sign stating "road construction" would not indicate which lane is open and which lane is closed. Hayes felt that Carmona "could have easily not known the traffic had been diverted to the inside lane if he pulled on to the road anywhere between the road work crew and where the accident occurred."

Bryan Pagel, a Texas Department of Transportation ("TxDOT") inspector, testified that Clark Construction was performing construction for the State of Texas in accordance with its contract with TxDOT. Rudy Valdez, III, an employee of Clark Construction, testified that Clark Construction was responsible for traffic control and that the right lane was closed at the time of the accident. Luis Ruiz, a foreman for Clark Construction, testified that traffic had been diverted into the left lane. Ruiz and Valdez both testified that a pilot car was not in use. According to

3

Ruiz, TxDOT is responsible for telling Clark Construction where to place signs. Pagel testified that there were no signs advising motorists traveling on the side streets as to which lanes were open, but there were signs that advised of "road work ahead."

Valdez explained that construction signs were placed at both ends of the construction zone and cones were used as required by TxDOT. Ruiz testified that "closed road" signs had been posted at both ends of the construction zone, flaggers were present at the construction site to prevent motorists from driving onto the closed portion of the road, and each intersection had a barricade that read "End of Road Work." Pagel did not recall any problems with Clark Construction's signage or traffic control and he opined that traffic control was properly implemented on the day of the accident. Valdez testified that he would not have done anything differently that day and would still set up the construction site per TxDOT's instructions.

Chad Clark, vice-president of seal coat operations for Clark Construction, testified that Valdez was in charge of the project on the day of the accident, but was not in charge of the safety of the traveling public. He admitted that Clark Construction sets up barricades and other traffic devices, but explained that the construction site must be set up per TxDOT's instructions and Clark Construction

has no discretion regarding traffic control. He explained that "TxDOT would have told us how to set up the traffic control, where to put the barricades up on the side streets and that's the way we would have channeled traffic." He believed traffic control was safely implemented on the day of the accident. Because Carmona and Bendy received citations, he believed that they were at fault for causing the accident. After the project's completion, TxDOT sent a letter to Clark Construction, which stated that the work was "completed in a satisfactory manner in accordance with plans and specifications."

Engineer Randolph Schulze agreed that the contractor must follow the contract's traffic control plan ("TCP") and that no amount of inspection or lack thereof would relieve the contractor of this duty. He believed that Bendy was lawfully turning right, but turned into the path of a high-speed vehicle, which indicates that she either did not know the vehicle was coming or failed to take evasive action. He admitted that, without signs or cones prohibiting entry into a particular lane, it would be difficult for a motorist to determine on which side of the cones to drive. He also admitted that Clark Construction's TCP could have been safer and that he saw nothing in the contract that would have prevented Clark Construction from placing barricades, barrels, or additional cones at the construction site. Schulze explained that "the contract documents do not go into

5

sufficient detail to deploy a complete traffic control plan and that judgment is required and [] the contract documents give all that authority to the engineer." He testified that "spacing of the cones, the radius of curvature . . . the location issues are subject to engineering judgment." Thus, he did not believe it was Clark Construction's contractual responsibility to "channelize" traffic.

In his affidavit, Engineer David Steitle explained that "there were no cones or temporary traffic control devices at the intersection of FM 105 and West Circle Drive to prevent Mr. Carmona from traveling past West Circle Drive at the location of this incident." In his deposition, Steitle testified that a contractor is supposed to manage construction, minimize disruption of traffic, and make efforts to ensure the safety and convenience of property and the public. He testified that the contractor is directed by the plans, specifications, and authorized engineer. Steitle explained that barricades should be used "anywhere that there is access that could result in a vehicle entering a work space where the public is not intended to travel." According to Steitle, this option should have been used to prohibit motorists from turning into the work space. Steitle also testified that cones should have been used to "delineate the intended path and to channelize traffic into the proper alignment[]" or to "separate the driving area from the non-driving area[.]" He explained that cones should not have been placed where the accident occurred

because, at the time of the accident, construction was not being performed on that part of the road. Steitle opined that because cones were used, traffic coming from the side streets should have been channeled into the open lane of traffic. Steitle admitted that a TCP probably requires engineering judgment. He concluded that:

> . . . Clark Construction [] was negligent in inadequately applying traffic control devices for a traffic control plan that would have protected the public. Clark Construction [] had a duty to properly apply traffic control devices to prevent the public from using the part of the roadway that was intended to not be used by the public. Clark Construction [] failed to apply such traffic control devices. Additionally, Clark Construction [] did not act in accordance with its contractual obligations to apply the aforementioned traffic control devices. This failure, in my opinion, constitutes negligence on the part of Clark Construction [] and was a substantial factor in bringing about this accident. If Clark Construction [] had properly applied the appropriate traffic control devices, this accident would not have occurred. The negligence of Clark Construction [] and the inadequate application of traffic control devices referred to above were the proximate and contributing cause of the accident in which [] Carmona struck [] Bendy as she turned from FM [105] onto West Circle Drive on the day of the accident. Clark Construction [] knew or should have known the condition of the traffic control devices on FM [105].

TxDot's standard specifications for construction documents state that construction should be managed in such a way as to minimize the disruption of traffic and every effort must be made to ensure the public's safety and convenience as provided in the contract and as directed. "Traffic control devices, advertisements, announcements, and other signs or messages within the highway right-of-way shall be placed only as authorized by a public authority or the official

7

having jurisdiction, for the purpose of regulating, warning, or guiding traffic." Adequate warnings, delineation, and channelization should be used to guide motorists in advance of and through the construction zone through the use of proper pavement markings, signage, or other devices. Engineering judgment should be exercised when selecting and applying traffic control devices, their location, and their design. The engineer develops and designs the TCP.

The contractor installs and maintains traffic control devices as shown on the TCP and as directed. The roadway, temporary approaches, and intersections should be maintained in a safe and passable condition. Other than minor adjustments to meet field constructability and visibility, the contractor cannot make changes to the location of any device or implement changes to the TCP without the engineer's approval. When authorized or directed, the contractor should provide additional signs or traffic control devices that are not required by the TCP. Should the TCP fail to accomplish the intended purpose due to any condition affecting the safe handling of traffic, necessary changes should be made, as directed, to correct the unsatisfactory conditions. The contractor should make reasonable efforts to promptly contact the engineer should an unexpected situation arise that causes the contractor to believe the TCP should be changed and the contractor should take prudent actions until the engineer is contacted.

Summary Judgment

We review a trial court's ruling on a traditional summary judgment motion *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). We "consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion." *Id.* at 756.

On appeal, Clark Construction contends that the trial court erred by denying its supplemental motion for summary judgment because, according to Clark Construction, it is entitled to immunity pursuant to section 97.002 of the Texas Civil Practice and Remedies Code. A contractor who constructs or repairs a highway, road, or street for TxDOT is not liable to a claimant for injuries arising from the performance of the construction or repair if, at the time of the injury, the contractor is (1) in compliance with contract documents (2) that are material to the condition or defect (3) that was the proximate cause of the injury. Tex. Civ. Prac. & Rem. Code Ann. § 97.002 (West 2011). According to the statute's legislative history, contractors making road repairs for the State of Texas "must conform to

the work specifications set by the governmental unit overseeing the project." *See* House Comm. on Civ. Practices, Bill Analysis, Tex. H.B. 1699, 78th Leg., R.S. (2003). "Sometimes those specifications may be inadequate or flawed to such a degree as to threat [sic] or cause harm or damage to some person or some property." *Id*. Thus, a contractor performing roadwork for the State of Texas may not be held liable for damage or injury resulting from work performed in substantial compliance with TxDOT's contract documents. *See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002.

The parties do not dispute that Clark Construction was repairing a road for TxDOT at the time of the accident. Therefore, if Clark Construction was in compliance with TxDOT's contract documents regarding traffic control and its conduct was the proximate cause of appellees' injuries, Clark Construction will be entitled to immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002.

Proximate cause is composed of cause in fact and foreseeability. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009). Cause in fact requires proof that the negligent act or omission was a substantial factor in bringing about the harm at issue, and absent that act or omission, the harm would not have occurred. *Id*. Whether an act or omission was a proximate cause of damages is usually a fact issue, but when the

10

facts are conclusive, the determination may be an issue of law. *Minn. Mining & Mfg. Co. v. Atterbury*, 978 S.W.2d 183, 197 (Tex. App.—Texarkana 1998, pet. denied).

The record demonstrates that Bendy received a citation for turning when unsafe and Carmona was cited for disregarding construction signs. Hayes testified that he was able to see Carmona's vehicle approaching, which suggests that Bendy should have also seen the vehicle. Pagel and Clark testified that traffic control was properly implemented on the day of the accident. Carmona admitted that he did not look to his left to see if any traffic was present. Bendy sued Carmona and the parties settled. Rader and Kuhnert sued both Carmona and Bendy and settled with Carmona, but their claims against Bendy are still pending. Given the traffic citations issued, Clark believed that Bendy and Carmona were responsible for causing the accident.

Nevertheless, the record also contains evidence suggesting that the accident would not have happened had the construction site been set up differently. Kuhnert testified that he could not think of anything Bendy did wrong on the day of the accident. Rader testified that she did not believe Bendy could have done anything to avoid the accident. Hayes testified that the manner in which the site had been set up would not indicate which lanes were closed and that, consequently,

11

Carmona may not have known that traffic had been diverted. Schulze admitted that without signage or cones blocking the lane, it would be difficult for a motorist to determine where to drive. Steitle testified that Clark Construction was required to "properly apply traffic control devices to prevent the public from using the part of the roadway that was intended to not be used by the public." Additionally, Clark Construction was required to maintain the roadway in a safe and passable condition. Steitle specifically mentioned the use of barricades to prevent access to a work area where the public is not meant to travel and cones to properly channelize traffic. Schulze admitted that he saw nothing in the contract that would have prevented Clark Construction from placing barricades, barrels, or additional cones at the construction site. Steitle concluded that Clark Construction's application of traffic control devices proximately caused the accident.

Viewing the evidence in the light most favorable to appellees, reasonable and fair-minded jurors could differ in their conclusions regarding whether Clark Construction's conduct was the proximate cause of appellees' injuries. *See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002; *see also Akin*, 299 S.W.3d at 122; *Mayes*, 236 S.W.3d at 755. Clark Construction failed to conclusively establish entitlement to immunity and the trial court properly denied Clark Construction's traditional motion for summary judgment. *See Bennett Truck Transp., LLC v. Williams Bros.*

12

*Constr.*, 256 S.W.3d 730, 731-33 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (Contractor was not entitled to summary judgment on the basis of section 97.002 when the evidence raised a fact issue as to whether the signage required by TxDOT was present.). We overrule Clark's issues and affirm the trial court's order denying Clark's motion for summary judgment.

      AFFIRMED.

_____<br>
STEVE McKEITHEN<br>
Chief Justice

Submitted on February 27, 2013
Opinion Delivered April 25, 2013
Before McKeithen, C.J., Gaultney and Kreger, JJ.